IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RAYMOND K. THOMPSON,

                Petitioner,                        OPINION AND ORDER

   v.

                                                     20-cv-292-wmc

CHRIS BUESGEN,

                Respondent.

---

Petitioner Raymond Thompson has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, raising three challenges to his 2013 convictions for three counts of first-degree sexual assault of a child, asserting that his trial counsel was ineffective in violation of the Sixth Amendment. (Dkt. #1.) As explained below, Thompson's petition will be denied because the Wisconsin Court of Appeals reasonably applied clearly established federal law and reasonably determined the facts in rejecting his claims.

UNDISPUTED FACTS[1]

A. State Proceedings

In 2011, the child victim, who was Thompson's daughter and born in December 2001, reported that Thompson had engaged in sexual contact with her since age five. The state charged Thompson with three counts of first-degree sexual assault of a child, with one of the counts covering the period between 2003 and August 2005, and one count of

---

[1] The following facts are taken from the pleadings and state court record submitted by the parties, but the summary of the trial testimony is taken primarily from the Wisconsin Court of Appeals' decision affirming Thompson's criminal judgment and the Wisconsin circuit court's denial of his postconviction motion, *State v. Thompson*, No. 2017AP2090-CR (Apr. 18, 2019).

repeated sexual assault of the same child. (Judgment of Conviction (dkt. #7-1) 6); https://wcca.wicourts.gov/caseDetail.html?caseNo=2011CF000118&countyNo=29&index=0&mode=details. At Thompson's two-and-a-half-day trial in the Circuit Court for Juneau County, Wisconsin, the child victim testified that, when she was younger, Thompson would come into her bedroom "in underwear or naked and pull down [her] shorts and underwear or pajamas, and he would take his private and rub it against [her] vagina and butt." The victim further testified that, on two occasions, Thompson took off her Pull-Up and put her on his lap while he had his pants and underwear down as he drove a blue truck.

On cross-examination, Thompson's counsel pointed out that the child victim had stated in an interview that Thompson had first assaulted her in her brother's room. She acknowledged that her earlier statement was inaccurate and testified that Thompson first sexually touched her in the blue truck, and that she was wearing a Pull-Up at the time. Thompson's counsel then asked: "[s]o you weren't potty trained until sometime, 5 or later?" And the victim testified, "I'm not sure when I was potty trained." To which counsel responded, "Because once you were potty trained you weren't wearing Pull-Ups anymore; is that true?" And the victim responded, "Yes."

Next, Detective Timothy Andres testified that Thompson had told him that he had driven with her in his lap many times "sometime after 2003" when the victim was about four years old. After the state rested, Thompson testified that he was "not sure when exactly [he] got [the blue truck] because [he] did not register it immediately," explaining "[he] bought it through the shop [he] worked at and it wasn't functioning." Thompson denied having sexually abused the victim, testifying that the victim's mother had

2

threatened to tell people that he was "sleeping with" the victim if he left her. The jury convicted Thompson on all counts, and the circuit court sentenced him to 20 years' imprisonment followed by 10 years' extended supervision.[2] (Dkt. #7-1.)

### B. Postconviction Motion and Direct Appeal

Thompson filed a postconviction motion alleging that his trial counsel was ineffective for failing to present: (1) evidence that he did not acquire the blue truck until 2006; and (2) testimony of two witnesses, including a friend of Thompson's named Anthony Hoffman. In support of his motion, Thompson introduced a Department of Motor Vehicles ("DMV") record that his blue truck was registered in March 2006. At an evidentiary hearing, Thompson testified that he purchased the blue truck in March 2006, and immediately registered it. (Dkt. #7-11, at 92-93.) He further testified that he first told trial counsel that he did not own the truck during the charged dates when he was "sitting there during trial . . . ." (*Id.* at 93-94.)

Next, Hoffman testified that: (1) he heard the victim's mother ask her sister to have the sister's daughter tell police that Thompson had inappropriately touched her; (2) he never saw Thompson inappropriately touch the child victim; (3) the victim's mother asked him to lie and say that he saw Thompson touch her inappropriately; and (4) the victim told him that Thompson never touched her inappropriately. (*Id.* at 13-18.) Hoffman further testified that he spoke with trial counsel but never told her about the victim's

---

[2] The circuit court later vacated and dismissed Thompson's conviction for repeated sexual assault of the same child "between August 2005 to spring 2011" because the other convictions occurred during the same charging period, but his sentence remained the same.

3

mother encouraging him to lie, adding that counsel did not respond to his voicemails. (*Id.* at 19.) Hoffman explained that he did not provide this information to the police because he did not "realize how it works." (*Id.* at 22, 29.) Hoffman further explained that he did not tell trial counsel about the victim's mother asking him to lie during their first conversation because he thought that they would talk again, and he did not think about sending something in writing to counsel. (*Id.* at 24-25.) Hoffman attended Thompson's trial but did not tell anyone about his interactions with the victim's mother. (*Id.* at 26.)

Thompson's trial counsel testified that she specifically asked Hoffman whether he had any evidence of the victim's mother trying to coerce the victim's testimony, but he told her that he had no direct evidence. (*Id.* at 34.) Thompson's trial counsel further testified that Hoffman was focused on promoting his own theory of defense -- that if anyone had gotten up during the night at the victim's residence, he would have heard it because he had lived with Thompson and the victim's mother. (*Id.* at 34-35.) Based on that information, trial counsel concluded that Hoffman's testimony was implausible, and she decided not to call him as a witness at trial. (*Id.* at 35.)

Thompson appealed, asserting that trial counsel had: (1) failed to investigate and present evidence showing that he did not register the blue truck until March 2006; (2) failed to present Hoffman's testimony; and (3) had committed cumulative error. (Dkts. ##7-2, 7-5, at 7-11.) The court of appeals affirmed Thompson's conviction and the order denying his postconviction motion, rejecting each of his allegations of ineffective assistance of counsel on the ground that he had not shown that trial counsel's performance was

deficient. The Wisconsin Supreme Court denied Thompson's petition for review in August 2014. (Dkt. #7-7.)

OPINION

Petitioner asserts that his trial counsel was ineffective for not: (1) presenting evidence that petitioner did not own a blue truck until 2006; and (2) calling Hoffman as a witness. He also claims that the cumulative effect of counsel's errors violated his right to effective assistance of counsel.

Ineffective assistance of counsel claims are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). To show that counsel's performance was constitutionally deficient in some way, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Further, to show actual prejudice, the petitioner must demonstrate, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The U.S. Supreme Court further clarified that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms," and "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.

Because the Wisconsin Court of Appeals addressed the merits of these three claims, this court's review of those claims is subject to a particularly deferential standard of review

5

under 28 U.S.C. § 2254(d).  Specifically, petitioner is not entitled to relief on these claims unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  A decision is contrary to clearly established federal law "if the rule the decision applies differs from governing law set forth in Supreme Court cases."  *Bailey v. Lemke*, 735 F.3d 945, 949-50 (7th Cir. 2013).  A decision involves an unreasonable application of Supreme Court precedent "if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case."  *Id.*

Alternatively, petitioner can obtain relief by showing that the state court's adjudication of his claims "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Again, however, the federal court owes deference to the state court, especially the underlying state court findings of fact and credibility determinations, which are all presumed correct unless the petitioner presents "clear and convincing" evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Woolley v. Rednour*, 702 F.3d 411, 426-27 (7th Cir. 2012).

### I.  Blue Truck Registration Evidence

Petitioner asserts that his counsel was ineffective for not presenting evidence that he did not register the blue truck until 2006.  The Wisconsin Court of Appeals determined that trial counsel's performance was not objectively unreasonable when the fact that the blue truck was not registered until March 2006 did not undermine the victim's testimony that she was assaulted when she was around five years old, and her fifth birthday occurred

6

months after registration. The court further noted that trial counsel cross-examined the victim on her age and whether she would have worn Pull-Ups. It added that the postconviction court's determination that petitioner did not raise the truck registration issue in time for her to obtain the DMV record for trial was not clearly erroneous. The court concluded that the March 2006 truck registration did not undermine the victim's credibility because: (1) the victim did not set the charging period (2003 to August 2005) and admitted that she had difficulty remembering dates; (2) the state could have asked the court to amend the information to conform with the evidence; (3) petitioner testified at trial that he did not immediately register the truck after purchasing it; (4) petitioner could have assaulted the victim in the truck before it was registered; and (5) petitioner had told a detective that he regularly rode with the victim in his lap when she was about four years old.

    The Wisconsin Court of Appeals reasonably determined that petitioner's trial counsel was not deficient for failing to introduce the DMV record for the blue truck when petitioner did not tell her that he did not have the blue truck during the charged dates until the middle of trial, and testified at trial that he was unsure when he got the blue truck and did not immediately register it. Also, counsel challenged the victim's version of events by cross-examining her about her potty-training timeline and whether she would have worn Pull-Ups at age five. While petitioner makes much of counsel's postconviction testimony that she "wish[ed]" she had thought of introducing the DMV record, she "may have been able to get [the DMV records]," and there was no strategic reason not to introduce that record (dkt. #7-11, at 38, 48-49), this testimony does not show that counsel was

7

objectively deficient -- particularly when petitioner first notified her that it might be relevant in the middle of a two-and-a-half-day trial. *Bryant v. Brown*, 873 F.3d 988, 998 (7th Cir. 2017) (*Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind," and counsel "acknowledged making mistakes [which] merely highlights that the defense strategy did not work out as well as counsel had hoped, not that counsel was incompetent" (quotation marks omitted and alteration adopted)); *Harrington v. Richter*, 562 U.S. 86, 110 (2011) ("[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight"); *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009) (attorney "reflection after the fact is irrelevant to the question of ineffective assistance of counsel").

Even considering petitioner's postconviction hearing testimony that he immediately registered the blue truck after purchasing it, the Wisconsin Court of Appeals reasonably concluded that the DMV record would not have changed the outcome of his trial. First, the state could have sought to amend the information so that the charged period matched the proof at trial under Wis. Stat. § 971.29(2) ("At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant."). Second, the jury convicted petitioner despite counsel eliciting testimony that the victim was unsure of when she was potty trained and would have stopped wearing Pull-Ups. Third, Detective Andres testified that petitioner had admitted to driving with the victim in his lap when she was about four years old, which was around the time that he says he purchased and registered the blue

truck. Thus, even if petitioner established that his counsel was deficient for not presenting the DMV record, which was, at best, arguable for the reasons discussed above, he has not shown that he suffered actual prejudice, so he is not entitled to relief under § 2254(d).

**II. Hoffman Testimony Claim**

Next, petitioner asserts that his counsel was ineffective for not calling his friend Hoffman as a witness. The Wisconsin Court of Appeals found that trial counsel had reasonably decided not to call Hoffman as a witness when he had told her that he had no direct evidence of the victim's mother coercing her testimony. Moreover, the court of appeals concluded that the postconviction court reasonably found that Hoffman's testimony was not credible when he explained that he did not tell counsel about the victim's mother asking him to lie because he thought he would talk with counsel again, did not know how to report the incident to the police, never thought about writing to trial counsel to tell her about the incident, and attended trial but never told counsel about the incident.

"State court findings, including credibility determinations, are presumed correct on federal habeas review, unless the petitioner rebuts those findings with 'clear and convincing evidence.'" *Woolley*, 702 F.3d at 426-27 (citing 28 U.S.C. § 2254(e)(1)). Based on this record, the Wisconsin Court of Appeals reasonably determined that counsel did not perform deficiently when it credited her testimony that she specifically asked Hoffman whether he had any evidence that the victim's mother was coercing the victim's testimony, but he told her that he had no direct evidence. Moreover, the court of appeals reasonably concluded that counsel made a strategic decision not to call Hoffman at trial when he was

9

focused on his theory that he would have heard anyone get up in the night while he was living with the petitioner and victim. Indeed, that decision makes particular sense considering the victim's trial testimony that petitioner assaulted her *outside the house*. The court of appeals also reasonably found incredible Hoffman's testimony that he did not know how to tell the police about the victim's mother asking him to lie, and he did not tell counsel about the incident because he thought he would talk with her again. Accordingly, petitioner has not demonstrated that the state court made unreasonable determinations of fact.

### III. Cumulative Error

Finally, petitioner asserts that the totality of trial counsel's mistakes violated his right to effective assistance of counsel. The Wisconsin Court of Appeals concluded that, petitioner had not shown that his trial counsel was deficient in any respect, so there was necessarily no cumulative error. Trial counsel made *at most* one error, not getting the DMV records for the blue truck, but one error is not enough to establish cumulative error, so he is also not entitled to relief on this ground. *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000) ("[I]f there was no error, or just a single error, there are no ill effects to accumulate.").

### IV. Certificate of Appealability

The only remaining question on habeas review is whether to grant petitioner a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order

adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). For all the reasons just discussed, petitioner has not made such a showing. Therefore, a certificate of appealability will not issue.

## ORDER

IT IS ORDERED that:

1) Petitioner Raymond Thompson's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (dkt. #1) is DENIED.

2) No certificate of appealability shall issue.

Entered this 23rd day of January, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge